## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-20458-Civ-TORRES

MALAK KHATABI,

     *Plaintiff,*

v.

CAR AUTO HOLDINGS, LLC; *et al,*

     *Defendants.*

_____/


## <u>ORDER ON DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, NEW TRIAL AND REMITTITUR</u>

This matter is before the Court on Defendants' renewed motion for judgment as a matter of law, or in the alternative, motion for new trial or remittitur. [D.E. 117]. Plaintiff timely responded to the motion [D.E. 128], to which Defendants replied. [D.E. 131]. The motion, therefore, is ripe for disposition.[1] After careful review of the motion, response, reply, relevant authorities, and evidence of record, Defendants' motion is **GRANTED in part** and **DENIED in part**.

---

[1] On May 31, 2022, Chief Judge Cecilia M. Altonaga referred this case to the Undersigned Magistrate Judge for all further proceedings pursuant to the parties' consent. [D.E. 76].

## *I.     BACKGROUND*

This case stems from Plaintiff's employment with Defendant, Car Auto Holdings, LLC ("the Dealership"), which was allegedly laden with sexual harassment and unpaid wages. In April of 2022, the parties went to trial on Plaintiff's claims of unpaid wages and sex-based discrimination. The jury awarded Plaintiff $513.00 in damages for her unpaid minimum wages claim, and $81,028.00 in compensatory damages and $750,000.00 in punitive damages for her sex discrimination claims.

After the trial, the presiding Judge referred the matter for settlement conference.   During that process, the parties consented to Magistrate Judge jurisdiction to facilitate a resolution.   The parties' efforts to settle the matter ultimately failed.  So the pending post-trial motions were due to be adjudicated.  The Court granted the Defendants' initial Rule 60 motion to amend the judgment with respect to the individual Defendant's extent of liability in the case.   After that judgment was amended, the Defendants filed the renewed Rule 50 and 59 motion with respect to unresolved post-judgment issues following the jury's verdict.

In the pending motion, Defendants challenge the jury's conclusions in various ways and for various reasons. In sum, Defendants seek the following relief:

- Judgment as a matter of law as to Plaintiff's discrimination claim;

- Judgment as a matter of law as to punitive damages;

- Judgment as a matter of law as to Plaintiff's unpaid wages claim;

- Judgment as matter of law as to Plaintiff's lost wages claim;

- Or alternatively, a new trial as to all damages;

- Or alternatively, remittitur as to the sex-discrimination damages award.

We will first address Defendants renewed motion for judgment as a matter of law before addressing Defendants' alternative motions for a new trial and remittitur.

## II.   ANALYSIS

### A. <u>*Renewed Motion for Judgment as a Matter of Law*</u>

Defendants assert several arguments for entry of judgment as a matter of law in their favor. As to the discrimination claim, Defendants argue that legally insufficient evidence did not support the jury's conclusion that Defendants discriminated against Plaintiff on the basis of her sex. Further, Defendants argue that, even if sufficient evidence supported Plaintiff's discrimination claim, there is no basis in the record impute liability on the employer for an individual employee's harassing behavior.

As to Plaintiff's punitive damages award, Defendants similarly argue that the evidence is insufficient to support the jury's award and to impute liability on the employer.

As to the lost wages and unpaid wages claim, Defendants argue that there was not sufficient evidence from which the jury could properly calculate damages. As such the verdict could not stand.

"A judgment as a matter of law is warranted only '[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *U.S.S.E.C. v.*

*Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004) (quoting Fed. R. Civ. P. 50(a)(1)); *see also Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004) (same). Further, "in ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007).

To determine whether sufficient evidence supports the verdict, "'the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party.'" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)). We must remain cognizant that "[i]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)).

### 1. *Discrimination Claim*

Defendants argue first that Plaintiff failed to establish a prima facie case for her sex discrimination claim. The claim has five elements:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)) (en banc). Defendants attack the jury's decision on four grounds: (1) that the alleged misconduct was not of a sexual nature; (2) that the alleged misconduct was not based on Plaintiff's sex; (3) that the alleged misconduct was not severe or pervasive; and (4) that the alleged misconduct is not imputable to the Dealership. After evaluating the evidence presented at trial and drawing all inferences in favor of Plaintiff, we reject each of Defendants' arguments. We address each argument in turn.

Defendants initially argue that the complained-of conduct was not sexual in nature. Specifically, they contend that an unwelcome kiss on Plaintiff's forehead, an unwelcome graze of Plaintiff's bottom, and an unwelcome massage of Plaintiff's shoulders (among several other pieces of testimony that Defendants conspicuously omit) "simply cannot support the inference that … the conduct was of a sexual nature." [D.E. at 10].

Defendants' argument is wholly unpersuasive. The jury's conclusion was supported by testimony that evidenced: an unwelcome kiss on Plaintiff's forehead; an unwelcome graze of Plaintiff's backside; comments that Plaintiff was "hot for an 18 year old"; a swiping of Plaintiff's phone and a "gawking" at her private Instagram photos; Plaintiff being told that "tienes culo"[2]; Plaintiff being told that test drivers want a "piece of her ass"; co-workers asking Plaintiff to romantically set them up with

---

[2] The Court takes judicial notice that the English translation from this Spanish sexist slur is "you have ass."

her friends; Plaintiff being told that she should hand out business cards in a bikini; Plaintiff being called a "bitch" in front of customers; and other inappropriate conduct.

Undoubtedly then, drawing all reasonable inferences in favor of Plaintiff, there existed sufficient evidence for a reasonable jury to conclude that the conduct was of a "sexual nature." *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (holding that complained-of conduct was of a sexual nature where the conduct included, *inter alia*, "unwanted massages," was "humiliating," asked inappropriate questions about the plaintiff's private life, and other conduct that indicated a "continuous barrage of sexual harassment").

Next, Defendants argue that Plaintiff did not prove "that the harassment was because she was a female, as opposed to being a male." [D.E. 117 at 9]. In support, Defendants argue that the discriminatory comments and actions were "not gender motivated." [*Id.*]. Yet all this cited evidence clearly shows that, had Plaintiff been a male, she would *not* have been subject to the same conduct and treatment. Indeed, sufficient evidence exists that had Plaintiff not been a woman, she would not have been inappropriately touched and would not have been the subject of unwelcome, derogatory sexual comments aimed at her body.  The jury's finding on this score is amply supported by the evidence especially when viewed in the light most favorable to Plaintiff.

For instance, Plaintiff testified that while three of her supervisors were sitting together, Carlos Rios uttered as she walked away that test drivers "wanted a piece of her ass," while the other two supervisors burst out in laughter. [D.E. 62 at 159].

Plaintiff also testified that she was told that she was a "very beautiful woman" and would promote business if she handed out business cards in a bikini. [*Id*. at 166–67]. Plaintiff also testified that she was referred to as a "bitch" in front of customers. [*Id*. at 175]. Clearly, the jury credited Plaintiff's testimony in these respects and rejected Defendants' efforts to undermine her credibility on cross-examination and through their competing witnesses.

Further, there is testimony that no male employees were asked by their supervisors to hook them up with friends, had their shoulders massaged or their bottoms grazed, or were subject to uncomfortable sexually-charged comments. All combined, with all reasonable inferences drawn in favor of Plaintiff, there existed more than enough evidence in the record for the jury to conclude that had Plaintiff been a male, she would not have been subject to that treatment. *See Reeves*, 594 F.3d at 811 (holding that "a substantial portion of the words and conduct alleged in this case may reasonably be read as gender-specific, derogatory, and humiliating. This evidence, measured against the aforementioned principles, is sufficient to afford the inference that the offending conduct was based on the sex of the employee."). And because sufficient evidence exists, it is not for the Court to supplant the jury's conclusion. *Lipphardt*, 267 F.3d at 1186 ("We will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence.").

Moreover, as to the fourth requirement, Defendants argue that the discriminatory conduct was not so "severe and pervasive" that it effectively changed

the terms of Plaintiff's employment. Rather, Defendants assert, "these isolated incidences, even if accepted to constitute unpleasant conduct, certainly do not rise to the level of pervasive and severe conduct that a reasonable person would be forced to retract from." [D.E. at 13].

We disagree. For harassing conduct to be "sufficiently severe or pervasive," the behavior "must result in an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] … to be abusive.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Here, the jury found that both of those requirements were met.  And our review of the record supports that conclusion. Specifically, sufficient evidence supports the jury's conclusion that a reasonable person—who has her bottom grazed, her shoulders massaged, is told that she "tienes culo," is told she is "hot for an 18 year old," is called a "bitch" in front of customers, and experiences other misconduct—would consider this environment severe *and* pervasive. Indeed, as has been repeatedly presented, sufficient evidence supports that the harassment was "severe," "not infrequent," "humiliating," and "interfered with [Plaintiff's] job performance." *Johnson*, 234 F.3d 501, 509 (holding that conduct was objectively harassment after considering four factors: the frequency of the conduct, the severity of the conduct, whether the conduct was humiliating, and whether the conduct interfered with the plaintiff's job performance"); *see also Reeves*, 594 F.3d at 813–14 ("In short, if Reeves's account is to be believed, C.H. Robinson's workplace was more than a rough environment—

indiscriminately vulgar, profane, and sexual. Instead, a jury reasonably could find that it was a workplace that exposed Reeves to disadvantageous terms or conditions of employment to which members of the other sex were not exposed. Title VII was plainly designed to protect members of a protected group from adverse conditions of employment like those Reeves alleges were endemic to C.H. Robinson."); *Miller*, 277 F.3d at 1277 ("Thus, having established the frequency, severity, and humiliating nature of the conduct, Miller's failure to establish convincingly how Galpin's conduct interfered with his duties is not fatal to his hostile environment claim, given the totality of the circumstances. We therefore cannot conclude that the jury unreasonably found Galpin's conduct to be sufficiently severe and pervasive such that the terms or conditions of Miller's employment were altered.").

Further, Defendants do not dispute that Plaintiff subjectively perceived the conduct as abusive. Thus, we find that sufficient evidence supports the jury's decision that the sexual harassment was severe or pervasive.

Lastly, as for the final element, Defendants argue that any discriminatory conduct was not imputable to the Dealership. To that end, the Dealership pursues an affirmative defense that imposes two requirements: (1) that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) that Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by [the Dealership] or to avoid harm otherwise." *Johnson*, 234 F.3d at 510 (quoting *also Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2284, 141 L. Ed. 2d 662 (1998)). "As an affirmative defense, the defendant

bears the burden of establishing both of these elements." *Nurse "BE" v. Columbia Palms W. Hosp., Ltd. P'ship*, 490 F.3d 1302, 1309 (11th Cir. 2007).

Here, the Dealership has presented no meaningful argument that it exercised reasonable care to promptly address the discriminatory behavior. The only evidence Defendants point to in support of this affirmative defense is that it had a policy in place to protect against discrimination. But that the policy existed is not enough; indeed, Defendants cite no authority to support their apparent proposition that having a policy against discrimination is *per se* sufficient to carry the burden of the affirmative defense.

And this is especially true where the evidence supports that the Dealership utterly failed to implement its very own policy. *See Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1314 (11th Cir. 2001) (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000)) (noting that it is the employer's burden to establish that it acted "reasonably promptly on [Plaintiff's] complaint when it was given proper notice of her allegations as required under its complaint procedures").

In fact, the Dealership's policy requires that when faced with misconduct, an employee should "promptly report the [discriminatory] incident to [his or her] supervisor." [D.E. 65-1 at 9]. And sufficient evidence supports that Plaintiff did just that. She testified that she complained to Mike Rios and Julio Hanano—two supervisors—about the misconduct, and the treatment did not stop. [D.E. 62 at 160]. Additionally, when asked whether she complained to human resources, Plaintiff

testified that Carlos Rios—the owner of the Dealership—informed her that there was no HR.

Specifically, Plaintiff asserts she was told that "[t]he Dealership does not have human resources," as "Edgar Lockhart and Carlos Rios had told [Plaintiff] there's no HR." [*Id.* at 161]. Plaintiff further testified that when she asked Mr. Lockhart about human resources, "[h]e laughed and said '[t]here is no HR, sweetheart.'" [*Id.*]. Testimony by both parties further supported that Mike Rios, Carlos Rios, and Mr. Hanano were Plaintiff's supervisors. And this is taken in conjunction with Carlos Rios's testimony that the policy in place was for *the managers* to report any apparent "HR issues." [D.E. 63 at 171].

To undercut this testimony, Defendants argue that Plaintiff "failed to avail herself to the possibility of seeking out some recourse to stop this alleged harassment at the workplace." [D.E. 117 at 14]. But Defendants' conclusory assertion that Plaintiff did not seek help from HR—despite testimony that Plaintiff asked the owner of the Dealership and several supervisors about HR and was told that HR does not exist—does not carry its burden to upset the jury's contrary finding. Indeed, when asked whether department managers are responsible to report any alleged HR issue, Carlos Rios responded: "Yes." [*Id.*]. And that they did not do.

In sum, not only have Defendants failed to carry the burden of their affirmative defense, but in fact, ample evidence weights against that affirmative defense. Thus, sufficient evidence supports that liability was properly imputed to the Dealership. *See Dees v. Johnson Controls World Services*, 168 F.3d 417, 422 (11th Cir. 1999)

(noting that "the employer's notice of the harassment is of paramount importance [because] if the employer had notice of the harassment … then it is liable unless it took prompt corrective action"); *see also Faragher*, 524 U.S. at 789 (noting that "the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy"); *Miller*, 277 F.3d at 1280 ("It was thus reasonable for the jury to conclude that Kenworth was directly liable for the hostile work environment it should reasonably have known of, yet failed to remedy.").

Accordingly, because sufficient evidence supports the jury's conclusion that Plaintiff established a viable case of discrimination, Defendants' renewed motion for judgment as matter of law is denied.  A reasonable juror could readily find, based on the evidence summarized above, that Plaintiff was discriminated against based on sex and that the employer could be held liable notwithstanding its stated policy.

## 2. *Punitive Damages*

Next, Defendants argue that they are entitled to judgment as a matter of law as to punitive damages. To that end, Defendants assert that Plaintiff failed to meet her burden of demonstrating that the Dealership acted with "malice or reckless indifference." Defendants further argue that Plaintiff has not demonstrated that punitive damage liability was properly imputed to the Dealership. Neither argument is persuasive.

To obtain punitive damages under Title VII, a plaintiff must show that the defendant "has engaged in discriminatory practices with malice or reckless

indifference to the federally protected rights of an aggrieved individual." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999) (quoting 42 U.S.C. § 1981a(b)(1)). To demonstrate malice or reckless indifference, a plaintiff must show "an evil motive or intent to deprive a plaintiff of … her federally protected rights or a conscious indifference to those rights." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). At minimum, the plaintiff must show that the "employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Id*. Further, "[a] jury may find reckless indifference where the employer does not admit that it knew that its actions were wrong." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000).

Here, Plaintiff made that requisite showing to the jury. Indeed, sufficient evidence supports the finding that, at a minimum, Defendants acted "in the face of a perceived risk" that their treatment of Plaintiff violated Title VII. For one, the Dealership—as it vehemently argues—had a policy against discrimination. And "[a]lthough implementation of a written or formal anti-discrimination policy is relevant to evaluating an employer's good faith efforts to comply with Title VII, it is not sufficient in and of itself to insulate an employer from a punitive damages award." *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1320 (S.D. Fla. 2004), *aff'd*, 183 F. Appx. 872 (11th Cir. 2006). "The employer must both have a policy and must use good faith efforts to enforce it." *Id*. at 1321 (citing *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 385 (2d Cir. 2001); *Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 568 (7th Cir. 2001)).

As previously explained, testimony supported that Plaintiff complained to the Dealership's owner and other supervisors but was summarily shooed away. Plaintiff was told both by a supervisor and the Dealership's owner that there existed no HR to hear her complaints. And not only did Plaintiff seek out HR through her managers, but it was in fact the mangers' responsibility to report misconduct to HR (which they declined to do). [D.E. 63 at 171]. Clearly, then, sufficient evidence supports that the Dealership knew discrimination was improper (given it had a policy); implemented a policy; ignored Plaintiff's complaints to invoke that policy; defied their own policy of reporting misconduct; and continued to engage in the complained-of conduct.

Accordingly, drawing all reasonable inferences in favor of Plaintiff, sufficient evidence certainly supports the jury's finding that the Dealership "at least discriminate[d] in the face of a perceived risk that its actions [would violate] federal law." *Kolstad*, 527 U.S. at 536. Indeed, when it comes to punitive damages, the "defendant bears the burden of asserting and proving good faith compliance with Title VII." *Richardson*, 334 F. Supp. 2d at 1320. And Defendants have not shown that they adequately enforced their policy nor that they in good faith complied with Title VII. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1281 (11th Cir. 2008) (affirming punitive damages award under Title VII because while the employer contended "that it attempted in good faith to comply with the civil rights laws because it adhered to an antidiscrimination policy … the record supports the finding of the jury that the antidiscrimination policy of [the employer] was totally ineffective" because "it did not stop [employees] from making [discriminatory] comments because supervisors did not

follow the policy"); *Richardson*, 334 F. Supp. 2d at 1320 (holding that the employer did not prove good faith compliance with Title VII because, even though it had an internal discrimination policy, it did not "comply with the law by enforcing its policies and procedures on sexual harassment and retaliation"); *Marlite, Inc. v. Eckenrod*, 2011 WL 39130, *3 (S.D. Fla. Jan. 5, 2011) ("[I]t is not the function of the Court to make credibility or factual determinations ... if there are conflicting inferences that can be drawn from that evidence, it is not the Court's role to pick the better one.").

Further, sufficient evidence supports the finding that the punitive damages are imputable to the Dealership. To impute punitive damages to an employer, a plaintiff must show "either that the discriminating employee was high up the corporate hierarchy, or that higher management countenanced or approved his behavior." *Dudley*, 166 F.3d at 1323.

Here, drawing reasonable inferences in favor of Plaintiff, sufficient evidence was presented for the jury to conclude that the owner of the dealership, Carlos Rios, both participated in the misconduct and failed to report the misconduct despite a known duty to do so. Indeed, Plaintiff testified that it was Carlos Rios who, in the presence of two of Plaintiff's other supervisors, remarked as Plaintiff walked away that a customer wanted a "piece of [her] ass." [D.E. 62 at 159]. Similarly, testimony supports that Carlos Rios told Plaintiff multiple times that she was a "pretty woman" and has a sales advantage as a result. [*Id*. at 155]. Further, Carlos Rios told Plaintiff that there was "no HR" to lodge complaints with. [*Id*. at 161].

And to reiterate, the Dealership's policy required Plaintiff to report misconduct to her managers. Plainly, the Dealership's owner and multiple supervisors were put on notice of the discriminatory conduct when Plaintiff requested human resources, rebuked Plaintiff's complaints, and continued to engage in discriminatory conduct.

This demonstrates that the Dealership itself was sufficiently involved in the discriminatory conduct—and at least had constructive knowledge of the discriminatory conduct—to impute the jury's punitive damages award to the Dealership. *See Richardson*, 344 F. Supp. 2d at 1323 (finding that punitive damage liability was imputable to employer where the employer "did not act in good faith to comply with the law by enforcing its policies and procedures on sexual harassment and retaliation"); (citing *Parrish v. Sollecito*, 92 Fair Empl. Prac. Cas. 1021 (S.D.N.Y. 2003) (evidence was sufficient to support award of punitive damages against employer in Title VII case; evidence demonstrated that employer knowingly violated federal law in retaliating against female employee who complained of sexual discrimination and that employer's sexual harassment policy, if one existed, was not enforced in good faith)); *Dudley*, 166 F.3d at 1323 (noting that punitive damages are imputed where the plaintiff proves that the actors were either "high[ ] up the corporate hierarchy" or that "higher management countenanced or approved [their] behavior") (internal citations omitted); *Thomas v. Alabama Home Const.*, 271 F. App'x 865, 869 (11th Cir. 2008) ("Philip Gilbert acknowledged that during the relevant time period, AHC did not have any policies or procedures in place for employees to complain about being sexually harassed, and Gerhardt complained

repeatedly about Smith's inappropriate sexual conduct in the workplace to her supervisors, who took no corrective action. From this evidence, a jury could find that both defendants did not attempt in good faith to comply with Title VII, and that they acted with malice or with reckless indifference to Gerhardt's and Thomas's federally protected rights."); *cf. E.E.O.C. v. Exel, Inc.*, 884 F.3d 1326, 1332 (11th Cir. 2018) (affirming the district court's conclusion that the plaintiff "failed to present evidence sufficient to impute punitive damages to the employer, because the supervisor was "but one of 329 general managers" and oversaw only "0.1% of Exel's employees in North America").[3]

### 3.   *Lost Wages and Unpaid Wages Claims*

Next, Defendants seek judgment as a matter of law as to Plaintiff's claims for lost wages and unpaid wages. Specifically, Defendants take issue with Plaintiff's alleged inability to present to the jury a cognizable method of calculation of damages for any unpaid or lost wages (which were brought under both Florida and federal law). Thus, Defendants argue that the Court reverse the jury award of $513.00 for the two-week period between August 26, 2020 and September 9, 2020, and the $1,028.00 award for the period after Plaintiff was constructively discharged and before she found new employment.

---

[3] This analysis also implicitly addresses—and rejects—Defendants' motion for a new trial on punitive damages. In support, Defendants state in conclusory fashion that the punitive damages award was not supported by sufficient evidence and thus was against the "manifest weight of the evidence." [D.E. 117 at 35]. But, as analyzed here, sufficient evidence supported the jury's decision to award punitive damages. The weight of the evidence in fact strongly tilts in Plaintiff's favor.

As to the $513.00 figure, we find that, albeit not ideal, sufficient evidence was presented to the jury to calculate an award. The jury found that, between August 26 and September 9, Defendants failed to pay Plaintiff 60 hours of work at minimum wage. Under Florida law, "[u]ncertainty as to the amount of damages or difficulty in proving the exact amount will not prevent recovery where it is clear that substantial damages were suffered and there is a reasonable basis in the evidence for the amount awarded." *Adams v. Dreyfus Interstate Dev. Corp.*, 352 So. 2d 76, 78 (Fla. 4th DCA 1977). Similarly, this Circuit upholds damages awards where the evidence is sufficient for the jury to make a reasonable calculation. *See Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1247 (11th Cir. 2003) ("In reviewing GT&T's renewed motion for judgment as a matter of law on the amount of compensatory damages, we must decide whether there was a 'legally sufficient evidentiary basis for a reasonable jury' to find that GT&T's compensatory damages were $263,155.") (quoting Fed. R. Civ. P. 50(a)); *see also Mims Properties Invs., LLC v. Mosaic Fertilizer, LLC*, No. 8:11-CV-1093-T-TBM, 2014 WL 12617557, at *2 (M.D. Fla. Mar. 31, 2014) (upholding a damages award because the testimony presented was "sufficient to allow the jury to make a reasonable calculation of damages").

Here, the pretrial stipulation and Plaintiff's testimony—while admittedly not crystal clear—provide that reasonable basis. *Lington v. Pension Servs. Corp.*, 389 So. 2d 247, 249 (Fla. 2d DCA 1980) ("While we can sympathize with the court's concern over the confusing state of the financial records presented to it, we think that there

was sufficient evidence from which it could have made a determination as to the amount of compensation to which Mr. Linton was entitled.").

And it did not help matters that Defendants did not present payroll records that would accurately reflect Plaintiff's time and perhaps limit damages. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1267 (11th Cir. 2008) ("We recognize, of course, that the jury had to make approximations and estimates in order to arrive at a damages verdict because Farm Stores did not maintain payroll records documenting the number of hours each store manager worked."). Ultimately, Plaintiff presented evidence from which a "prudent impartial person can be satisfied with the damages." *Adams*, 352 So. 2d at 78. Because that is all that is required, Defendants are not entitled to judgment as a matter of law on this score.

As to the $1,028.00 figure, the jury awarded the minimum wage ($8.56 at the relevant time) for three forty-hour work weeks. The pretrial stipulation form shows that Plaintiff's last day of employment with the Dealership was December 15, 2020. Meanwhile, Plaintiff testified that her first day at her subsequent job was in mid-January, 2021. Thus, the jury's award contemplated three weeks of minimum wage pay to compensate the approximately three weeks that Plaintiff was without employment.

Once again, drawing all reasonable inferences in favor of Plaintiff, we find that sufficient evidence was presented to the jury via what was stipulated to and Plaintiff's testimony. *See Harmon v. Allstate Prop. & Cas. Ins. Co.*, 488 F. App'x 419, 420 (11th Cir. 2012) (affirming damages award because "the evidence provided the jury with

19

some basis for calculating damages; the evidence was less than necessary to allow the jury to figure damages with exact precision. But exact precision is not required."); *see also Markland v. Norfolk Dredging Co.*, 772 F. Supp. 1241, 1244 (M.D. Fla. 1991) (affirming damages award for lost wages despite that the only support was questionable witness testimony because "this evidence laid a sufficient foundation to enable the trier of fact to make a fair and reasonable determination of the lost wages suffered by Plaintiff"); *Adams*, 352 So. 2d at 78 ("A court cannot set aside the jury's award because it might disagree with the amount or because it might have ruled differently on the same proof. We find that there was a reasonable basis in the evidence for the jury's verdict."); *Servpro Indus., Inc. v. Spohn*, 638 So. 2d 1001, 1003 (Fla. 4th DCA 1994) ("Nevertheless, a confusing state of financial records does not prevent recovery if there is sufficient evidence from which a damage calculation can be made. We find that in the instant case there was sufficient evidence from which a determination on the amount of damages could have been made—it was for the jury to either accept or reject the amount sought.") (internal citations omitted).

Accordingly, Defendants renewed motion for judgment as a matter of law as to the lost wages and unpaid wages damages is denied.

### B. *Motion for New Trial*

Separately, Defendants move for a new trial on all damages for numerous reasons. First, Defendants argue that an improper closing argument warrants a new trial on all damages. Moreover, Defendants argue that there does not exist sufficient evidence to support Plaintiff's compensatory damages award for emotional harm.

A motion for new trial may be granted where "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict .... Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.'" *Lipphardt*, 267 F.3d at 1186.

## 1. *Closing Argument*

Defendants argue that because Plaintiff raised its argument for punitive damages to the jury for the first time in its closing argument rebuttal, a new trial is warranted. We reject this argument, as the Eleventh Circuit rejected a quite similar argument in *Goldsmith*:

> As counsel for Bagby Elevator conceded during oral argument, Bagby Elevator was on notice that the district court would submit the issue of punitive damages to the jury based on the complaint, the pretrial order, and the jury charge conference. If Bagby Elevator had been surprised by Goldsmith's argument about punitive damages, Bagby Elevator could have requested a surrebuttal, but Bagby Elevator failed to request an opportunity to respond on this issue. Goldsmith's reference to punitive damages in his rebuttal and the jury instructions on punitive damages did not clearly prejudice Bagby Elevator.

513 F.3d at 1282. Here, Plaintiff's request for punitive damages is present in the Amended Complaint [D.E. 27] and on the Joint Pretrial Stipulation. [D.E. 37]. Defendants contend that *Goldberg* should not apply because there, a punitive damages cap did not apply. But that is not dispositive; what is material is that if Defendants were "surprised by Plaintiff's argument about punitive damages,

[Defendants] could have requested a surrebuttal." *Id*. And in any event, if Plaintiff's comment to the jury that they should award damages beyond the Title VII cap was prejudicial to Defendants, any harm done is more adequately addressed by remittitur.

Thus, Defendants' argument fails.

### 2. *The Compensatory Damage Award*

Defendants also argue that Plaintiff's $80,000.00 compensatory damages award for emotional pain and anguish is against the manifest weight of the evidence and/or is not supported by sufficient evidence. "As we have observed, '[t]he standard of review for awards of compensatory damages for intangible, emotional harms is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.'" *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349 (11th Cir. 2000) (quoting *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999)) (internal quotation omitted). Thus, a jury verdict will be disturbed only "where the verdict is so excessive as to shock the conscience of the court." *Id*.; *see also Ferrill*, 168 F. 3d at 476 ("The standard of review for awards of compensatory damages for intangible, emotional harms is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.").

Given this standard of review juxtaposed against our objective and exhaustive review of the trial record, the jury's verdict must stand. As Defendants concede, testimony alone suffices to justify a jury's award of compensatory damages based on

emotional pain. *Id.* at 1349. Here, in addition to the deference we must pay to the jury's decision, Plaintiff presented testimony that the discrimination required her to receive counseling to deal with the emotional pain and anguish. Additionally, Plaintiff felt compelled to change the way that she dresses because of the Dealership's misconduct. Plaintiff also testified that she began self-treating with meditation and fears she will be traumatized the rest of her life from the sexual discrimination she faced.

Accordingly, because sufficient evidence supports the jury's decision—which we must not disturb unless it "shocks the conscience" (for which we have no basis to find)—Defendants' motion for a new trial and renewed motion for judgment as a matter of law as to compensatory damages is denied.

## C. *Remittitur*

Lastly, Defendants seek application of remittitur to the compensatory and punitive damages award. Specifically, Defendants rely on the damages cap set forth by 42 U.S.C.A. § 1981a(b)(3)(A) which applies a $50,000.00 damages cap in Title VII actions against employers with greater than 14 employees and fewer than 101 employees and the Florida Civil Rights Act ("FCRA"), which caps punitive damages at $100,000.00 but does not cap compensatory damages. § 760.11(5), Fla. Stat. (2023).

Plaintiff, in turn, argues that for two reasons the statutory caps should not apply. First, Plaintiff argues that Defendants have waived their right to raise the statutory cap issue because it must be raised as an avoidance or an affirmative

defense. Next, Plaintiff argues that Defendants have failed to make the necessary showing that they have greater than 14 employees and fewer than 101 employees.

### 1.   *Waiver of the Damages Cap*

As to waiver, Plaintiff's opposition is unpersuasive. Plaintiff argues that the damages cap argument was required to have been presented as "a Rule 8(c) avoidance" or affirmative defense. And because it was not presented as such, Plaintiff asserts that Defendants have waived their right to argue for application of the damages cap.

"An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999). An avoidance, similarly, "is the allegation or statement of new matter, in opposition to a former pleading, which, admitting the facts alleged in such former pleading, shows cause why they should not have their ordinary legal effect." 71 C.J.S. *Pleading* § 197.

At issue here are two damages caps. Under § 1981a:

 "[t]he sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000 ….

§ 1981a(b)(3)(a).

Meanwhile, the FCRA provides that "[t]he judgment for the total amount of punitive damages awarded under this section to an aggrieved person shall not exceed

$100,000." § 760.11(5), Fla. Stat. The FCRA does *not* impose a relevant cap on compensatory damages.

These damages caps are neither affirmative defenses nor avoidances: if applied, they would not "require judgment for the defendant," *Wright*, 187 F.3d at 1303, nor would they result in Title VII or the FCRA not having their "ordinary legal effect." 71 C.J.S. Pleading § 197. Indeed, the plain text of both statutes plainly illustrate that the damages caps are not potential defenses, but are non-negotiable components of the statutes: damages awards simply "shall not" exceed the specified amounts. § 1981a(3) (requiring that the amount of damages "shall not exceed …"; § 760.11(5), Fla. Stat. (requiring that the damages amount "shall not exceed …"). Thus, if we refused to apply the damages caps, we would compel a result in which Title VII and the FCRA have their *unordinary* legal effect.

The Eleventh Circuit has not spoken on the narrow issue of whether, under 42 U.S.C. § 1981a(b)(3)(A), application of the statutory damages cap must be affirmatively raised.[4] But this Circuit has noted that defenses which are not enumerated under Federal Rule of Civil Procedure 8(c) are less likely to be waivable, and particularly when they do not assert "new matter." *See Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1351 (11th Cir. 2007) ("The general rule of waiver is more easily applied when a party fails to set forth one of the nineteen defenses

---

[4] Similarly, the Court has been made privy to no binding authority (nor has the Court's research revealed authority) in which the FCRA's damages cap was challenged as an affirmative defense or an avoidance. But because the statutes' operative language is identical (i.e., "shall not exceed"), the Court sees no reason to analyze the two statutes separately.

specifically listed in Rule 8(c); waiver becomes less clear when a party fails to assert affirmatively some 'other matter' that pre-existing federal case law has not clearly construed as 'constituting an avoidance or affirmative defense' under Rule 8(c).").

Further, multiple district courts in this Circuit have persuasively viewed invocation of the damage caps not as affirmative defenses, but merely as binding and unconditional statements of law. That is, they are not adding "new matter," but simply incorporated into the very statute under which the plaintiff pursued relief. *See Torres v. TPUSA, Inc.*, No. 208-CV-618-FTM-29DNF, 2009 WL 764466, at *2 (M.D. Fla. Mar. 19, 2009) ("Defendant alleges that plaintiff's damages are limited by the applicable law under which they are brought. Plaintiff argues that this is not an affirmative defense, and the Court agrees. The 'defense' is simply a statement of law."); *see also Adams v. JP Morgan Chase Bank, N.A.*, No. 3:11-CV-337-J-37MCR, 2011 WL 2938467, at *5 (M.D. Fla. July 21, 2011) (granting motion to strike defendant's affirmative defense invoking the FCRA damages cap (i.e. that "Plaintiff's claim for punitive damages should be limited by the statutory cap specified in Florida statute § 760.11(5)") because Defendant's invocation of the cap was "not a valid defense, but rather, a statement of law"); *Moss v. GEICO Indem. Co.*, No. 5:10-CV-104-OC-10TBS, 2012 WL 882575, at *2 (M.D. Fla. Mar. 15, 2012) (granting motion to strike affirmative defenses because, in part, "subparagraphs 'c' and 'e' of GEICO's second affirmative defense are statements of law; not affirmative defenses").

As no binding case law supports Plaintiff's position, Plaintiff relies upon a Fifth Circuit case, *Ingraham v. United States*, 808 F.2d 1075 (5th Cir. 1987). There, the

court held that the damages cap provision of a Texas medical malpractice statute was required to have been raised as an avoidance.[5] In *Ingraham*, the court held that the defense surprised and prejudiced the plaintiff. Had the defendant raised the damages cap argument earlier, the plaintiff would have had "an opportunity and incentive to introduce evidence to support their constitutional attacks on the statute." *Id.* at 1079. This case was not a Title VII case, which makes it readily distinguishable and inappropriate to follow here.

But further, even if it was sufficiently analogous, we find the analysis in *Ingraham*—which is not binding—unpersuasive. Contrary to the Fifth Circuit's analysis, "Plaintiff[ ] should have known from the start that the statutes under which [she was] bringing [her] claims expressly [limited] recovery of punitive damages." *Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1362 (S.D. Fla. 2013). Plaintiff, by invoking Title VII and the FCRA, understood that a damages cap necessarily limited her damages. The statutes are not written such that a defendant must invoke the damages cap as an affirmative defense for it to apply. Rather, the damages caps are simply non-negotiable limits on liability; a requirement, not an option. *See Glowacki v. O'Reilly Auto Enterprises, LLC*, No. 1:21-CV-868, 2023 WL 8642549, at *8 (W.D. Mich. Dec. 14, 2023), *appeal dismissed*, No. 24-1033, 2024 WL 1640024 (6th Cir. Apr. 10, 2024) (quoting *Oliver v. Cole Gift Ctrs., Inc.*, 85 F. Supp. 2d 109, 111 (D. Conn. 2000)) ("This Court is persuaded that the

---

[5] The since-repealed statute stated as follows: "In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000." Tex. Rev. Civ. Stat. Ann. art. 4590i.

damages cap in § 1981a(b)(3) is not an affirmative defense. Instead, it is 'a Congressional limitation on the court's power to award damages to a Title VII plaintiff.' As such, it cannot be waived.").

So, while Plaintiff claims that she would suffer "prejudice" and be "deprived of due process" if the damages cap is imposed, any surprise would be occasioned by none other than Plaintiff's failure to follow the statutes she invoked. *See, e.g., Oliver*, 85 F. Supp. 2d at 111–12 ("No plaintiff … can complain of unfair surprise, prejudice, or lack of opportunity to respond when confronted with the … limitation of damages [under 42 U.S.C.A. § 1981a(b)(3)], because the limitation is part of the same statutory scheme under which the plaintiff has brought his or her claim.").  And to the extent the statute is prejudicial, that is Congress's policy decision in enacting the cap in the first place, which is a matter that the Court cannot second-guess by choosing not to apply the statute on its terms.

Plainly, § 1981 and the FCRA do not present the damages cap as an available defense; rather, the respective legislative bodies simply inform a plaintiff the amount of damages he or she is permitted to recover, a cap beyond which damages "shall not exceed." *See Jordan v. BBF No. 1, L.L.C*, No. 2:22-CV-00100-RDP, 2023 WL 2563720, at *2 (N.D. Ala. Mar. 17, 2023) (applying Title VII's damages cap even where the defendant exercised a "wholesale failure to defend in th[at] action"). Thus, not only is the damages cap not an affirmative defense or avoidance, but in no way could the invocation of the language of the damages provision surprise a Title VII plaintiff. *See Sweet v. Sec'y, Dep't of Corrections*, 467 F.3d 1311, 1321 n. 4 (11th Cir. 2006) ("[O]ur

cases interpreting [Rule 8(c) ] ... support a liberal approach to waiver where the failure to raise an affirmative defense has not prejudiced the plaintiff."); *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (noting that "when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue"); *Mid-Continent Cas. Co. v. King*, 552 F. Supp. 2d 1309, 1316 (N.D. Fla. 2008) (holding that an affirmative defense was not waived because no surprise or prejudice occurred to the plaintiff).

Accordingly, we find that § 1981's and the FCRA's damages-limiting provisions need not be presented as affirmative defenses or avoidances, and therefore were not waived by Defendants.

### 2.   *Defendant's Evidentiary Burden*

Further, Defendants have shown that they comfortably fit within § 1981's damages cap and are entitled to relief accordingly.

First, Plaintiff has cited to no binding authority that places the burden on Defendants to demonstrate that they fit within the damages cap.  The cap is merely a component of the damages element of the prima facie claim, thus one which Plaintiff is dutybound to support with evidence.  By that measure, Plaintiff cannot carry her burden of showing that Defendants fall outside or at the upper limit of the cap.

But even if that burden does belong to Defendants, that burden has been carried. The provision limits damages to $50,000.00 "in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks

in the current or preceding calendar year." § 1981a(b)(3)(A). At trial, Defendants presented the following testimony from the Dealership's owner, Carlos Rios:

- Q: Now, how many employees, roughly, does Car Auto Holdings have today:

- A: It's around 20, 22.

- Q: And was that consistent with the time around September of 2020?

- A: Give or take two to three people.

[D.E. 63 at 146]. On its face, this testimony supports a finding that (1) the Dealership has "greater than 14 and fewer than 101 employees," and (2) had approximately that number of employees for the preceding two years; i.e., for the "20 or more calendar weeks in the current or preceding calendar year." § 1981a(b)(3)(A). Thus, evidence was presented that Defendants fit within the damages cap.

Of course, Plaintiff could have presented evidence and argument that Defendants did not meet this cap—but Plaintiff did not do so. Plaintiff now contends that she should be entitled to discovery and/or an evidentiary hearing to demonstrate that the Dealership does not fit within the lowest ring of the damages cap. This request is denied; Plaintiff knew or should have known when she sought damages under Title VII that those damages come with necessary conditions and a cap. Plaintiff chose not to confront that risk at trial. It is not the Court's role to vexatiously extend these proceedings and cure Plaintiff's failure to combat a clear statutory cap on damages based on the testimony presented during the trial.

### 3.   *Amount of Remittitur*

As we have found that remittitur is appropriate, we must now determine by what amount the damages award must be reduced. Plaintiff's damages award for the emotional harm component of the sex discrimination claim is $80,000.00 in compensatory damages and $750,000.00 in punitive damages. In procuring this award, Plaintiff prevailed under both Title VII and the FCRA.

For this exercise, *Bradshaw v. School Bd. of Broward Cnty., Fla.* is instructive. 486 F.3d 1205 (11th Cir. 2007). There, the Eleventh Circuit clarified that "[t]he federal cap does not limit damages under parallel state laws ...." *Id.* at 1208. Indeed, "Congress expressly disclaimed any such intention." *Id.*[6] And so, when "possible," if an award of damages exceeds Title VII's cap, those damages that exceed the cap "should be thrown into a judgment under the Florida CRA" to the extent possible. *Id.* And "the Florida CRA, unlike Title VII, contains no general damages cap." *Id.*

Accordingly, to ensure "the remaining portion of her injury [is] remedied as much as possible under the Florida CRA," *id.* at 1207–08, Plaintiff must receive the full amount of her compensatory damages (which the FCRA does not cap), and $100,000.00 of punitive damages (the outer limit of the FCRA cap).

Thus, Plaintiff's total sex discrimination damages award is reduced to $181,028.00: the full amount of her compensatory damages ($81,028.00) and $100,000.00 in punitive damages (the maximum amount permitted under the

---

[6] 42 U.S.C. § 2000e-7 states that Title VII shall not be "deemed to exempt or relieve any person from any liability ... provided by any present or future law of any State ... other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter."

FCRA).[7] To hold otherwise would punish Plaintiff from prevailing both under the FCRA and Title VII as opposed to her prevailing under just the FCRA. *See Garcia v. Unit Dose Servs., LLC*, No. 0:23-CV-61352, 2023 WL 6962827, at *5 (S.D. Fla. Oct. 2, 2023), *report and recommendation adopted*, No. 23-61352-CV, 2023 WL 6958658 (S.D. Fla. Oct. 20, 2023) (awarding $100,000.00 in compensatory damages where the plaintiff prevailed under both Title VII and the FCRA because the FCRA provides no compensatory damages cap); *Booth v. Pasco Cnty., Fla.*, No. 8:09-CV-2621-T-30TBM, 2012 WL 2505732, at *2 (M.D. Fla. June 28, 2012) (citing *Bradshaw* and affirming $75,000.00 compensatory damages award where plaintiff prevailed under both Title VII and the FCRA because "even assuming that the damages awarded by the Jury exceeded the Title VII cap, the excess can simply be allocated to Plaintiffs' [FCRA] claims, which are not bound by Title VII's cap. As a result, in the instant case, it is clear that Title VII's damages cap should not reduce the Jury's damages award."); *Williams v. Sims Bros.*, 889 F. Supp. 2d 1007, 1009 (N.D. Ohio 2012) (interpreting *Bradshaw* to permit the plaintiff to "recover the larger of the two caps").

Thus, a reduction of the damages award is appropriate. Because the damages reduction is not a finding of fact and is not based on discretion—rather, it is an action necessitated by the FCRA's statutory cap and is therefore a matter of law—an offer of new trial is not required. *See Holmes v. W. Palm Beach Hous. Auth.*, 309 F.3d 752, 758 (11th Cir. 2002) (affirming district court's decision to reduce damage award without an offer of a new trial because it was "apparent as a matter of law" that the

---

[7] This includes the $1,028.00 backpay award, which remains undisturbed.

verdict needed to be reduced, and "[i]t was therefore not an abuse of discretion to reduce unconditionally the damage award returned by the jury"); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330–31 (11th Cir. 1999) (noting that "[w]here a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount"); *Cap. Inventory, Inc. v. Green*, No. 1:20-CV-3224-SEG, 2024 WL 1383228, at *2 (N.D. Ga. Feb. 29, 2024), *appeal dismissed*, No. 24-10890-A, 2024 WL 3102870 (11th Cir. Apr. 5, 2024) (citing *Johansen*, 170 F.3d at 1331) (reducing a damage award to a statutory cap and holding that "[u]nder these circumstances, the Court concludes that Defendants seek a reduction of the punitive damages award as a matter of law and not a traditional remittitur"); *Myers v. Cent. Fla. Invs., Inc.*, No. 604-CV1542-ORL-28DAB, 2008 WL 4710898, at *19 (M.D. Fla. Oct. 23, 2008) (reducing damages award and declining to offer a new trial because "as a matter of state law punitive damages may not exceed $500,000 in this case," and therefore "the award of punitive damages must be reduced to no more than that amount"); *Estate of Sisk v. Manzanares*, 270 F. Supp. 2d 1265, 1277–78 (D. Kan. 2003) (noting that "[f]ederal courts uniformly have held that statutory damages caps do not violate the Seventh Amendment, largely because a court does not 'reexamine' a jury's verdict or impose its own factual determination regarding what a proper award might be ... [but] simply implements a legislative policy decision to reduce the amount recoverable to that which the legislature deems reasonable").[8]

---

[8] Because the remittitur significantly reduces the damages award, we see no need to address Defendants' argument under *Gore* that the punitive damages award is

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion [D.E. 117] is **GRANTED in part** and **DENIED in part**.

**A.** Defendants' renewed motion for judgment as a matter of law is **DENIED**;

**B.** Defendants' motion for a new trial is **DENIED**; and

**C.** Defendants' motion for remittitur as a matter of law as to Plaintiff's sex discrimination claim is **GRANTED**. An amended judgment shall be entered reflecting that Plaintiff's total damages award for sex discrimination is reduced to $181,028.00.

**D.** Defendants' $513.00 damages award for unpaid wages remains undisturbed.

**DONE AND ORDERED** in Chambers in Miami, Florida this 8th day of July, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge

---

excessive. Defendants' argument was made, of course, as to the $750,000.00 punitive damage award—not the now-adjusted $100,000.00 punitive damage award that plainly falls well within *Gore's* limitations.