**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-20458-Civ-TORRES

MALAK KHATABI,

     *Plaintiff*,

v.

CAR AUTO HOLDINGS, LLC; *et al.*,

     *Defendants*.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

This matter is before the Court on Plaintiff, Malik Khatabi's Motion for Attorneys' Fees and Costs against Defendants, Car Auto Holdings, LLC and Carlos A. Rios. [D.E. 158]. Defendants filed a response, to which Plaintiff replied. The Motion, therefore, is ripe for disposition.[1] After careful review of the briefing, record, and relevant authorities, and for the reasons set forth below, Plaintiff's Motion is **GRANTED in part**.

---

[1] On May 27, 2022, the parties filed a Notice of Consent to the jurisdiction of the Undersigned Magistrate Judge. [D.E. 75].

## I.    BACKGROUND

This case stems from Plaintiff's employment with Defendant, Car Auto Holdings, LLC ("the Dealership"), which a jury found to have been laden with sexual harassment and unpaid wages. In April of 2022, the parties went to trial on Plaintiff's claims of unpaid wages and sex-based discrimination under Title VII, the Florida Civil Rights Act ("FCRA"), and the Federal Labor Standards Act ("FLSA"). Plaintiff prevailed on all claims, and the jury awarded her $513.00 in damages for her unpaid minimum wages claim, and $81,028.00 in compensatory damages and $750,000.00 in punitive damages for her sex discrimination claims.

Subsequently, Defendants challenged several facets of the trial in a post-judgment motion. The Court granted that motion in part, finding that the punitive damages award exceeded Title VII's damages cap, and reduced the total judgment to $181,028.00. [D.E. 132]. Plaintiff appealed that order, which is currently pending in the Eleventh Circuit. [D.E. 137].

Now, Plaintiff seeks attorneys' fees and costs for her success at trial, the litigation leading up to that trial, and the litigation following that trial. In all, Plaintiff seeks $545,454.92 in fees and costs: $170,658.25 in fees for her trial counsel; $368,192.50 in fees for her post-trial and appellate counsel; and $6,694.17 in costs for her trial counsel. In addition, Plaintiff seeks a 1.5 multiplier to this fee award, for a gross amount of $818,182.38.

Defendants, meanwhile, do not contest Plaintiff's general entitlement to fees under either Title VII, the FCRA, or the FLSA. Defendants also do not contest that

Plaintiff prevailed at trial. Rather, Defendants' primary objections are that (1) Plaintiff should not be permitted to recover post-judgment fees because that amount is wholly disproportionate to Plaintiff's pre-trial and trial fees (especially considering that Defendants' post-trial motions were largely successful), and (2) Plaintiff should not be entitled to a fee multiplier. Additionally, Defendants lodge specific objections to a multitude of Plaintiff's time entries and costs requests.[2]

## II.    ANALYSIS

First, we will assess Defendants' general objection that Plaintiff should not be entitled to attorneys' fees for the parties' post-trial proceedings. We will then assess Defendants' more specific, line-by-line objections to Plaintiff's fees and costs requests.[3]

### A. _Post-Trial Proceedings_

After trial, the parties briefed two primary motions. The first was Defendants' motion to amend the final judgment [D.E. 70], which sought to reduce Carlos Rios's

---

[2] At the outset, we reject Plaintiff's argument in her Reply that Defendants have waived their objections by ostensibly failing to comply with Local Rule 7.3. Without concrete evidence that Defendants ignored the requirements of Local Rule 7.3, the Court declines to exact the drastic remedy of awarding Plaintiff's cost and fee award in full and will address the merits of the Motion. _Carnival Corp. v. McCall_, No. 18-24588-CIV, 2021 WL 2338647, at *5 (S.D. Fla. Apr. 26, 2021), _report and recommendation adopted_, 2021 WL 2333102 (S.D. Fla. June 8, 2021) (quoting _Barrera v. Officina, Inc._, No. 10-21382-CIV, 2012 WL 692212, at *1 (S.D. Fla. Mar. 2, 2012)) ("Based on this record and notwithstanding the defendant's non-compliance with her obligations under Local Rule 7.3, the Court should exercise its discretion and consider the reasonableness of the plaintiff's fee request. '[E]ven in the absence of a response from the Defendants, the Court has a duty to ensure the Plaintiffs' request for attorneys fees is reasonable.'").

[3] Defendants do not challenge Plaintiff's general entitlement to fees as the prevailing party under Title VII, the FCRA, of the FLSA. The Court, then, will not question Plaintiff's statutory entitlement to its fees as prevailing party through trial.

individual liability to only the $513 in compensatory damages for unpaid wages. After that motion was filed, the Court denied it without prejudice to permit the parties to engage in post-trial settlement talks. [D.E. 71]. Those talks proved unsuccessful. Subsequently, Defendants sought to reinstate that motion. [D.E. 82]. Plaintiff's primary opposition was that Defendants blew their chance at "appealing" the judgment by allowing to lapse the time prescribed by Fed. R. App. 4(a)(4)(A). But because the Court clearly terminated the motion without prejudice [D.E. 71], with the intent that Defendants could reinstate their motion if settlement talks proved unsuccessful, the Court rejected Plaintiff's hyper-technical argument. The Court further granted Defendants' motion to amend the final judgment and reduced Carlos Rios's individual liability. [D.E. 99].

The second major post-trial motion was Defendants' motion for judgment as a matter of law, for a new trial, and for remittitur. [D.E. 117]. That motion proved partially successful for Defendants. While they did not secure a judgment in their favor or a new trial, Defendants did reduce their Title VII and FCRA damages from a total of $831,028.00 to $181,028.00 after application of Title VII's damages cap. Thus, although Defendants did not succeed on every portion of their motion, Plaintiff would be hard-pressed to argue that a $650,000.00 reduction in damages did not constitute a successful effort by Defendants.

Separately, the parties engaged in smaller, less consequential post-judgment motion disputes, such as Defendants' motion to stay execution of the judgment [D.E. 138] and to discharge their supersedeas bond obligation. [D.E. 151].

Yet Plaintiff argues that she is entitled to fees for *all* of these post-trial proceedings because "Plaintiff staved off the Defendants' attack on the validity of the verdict and the judgment." [D.E. 158 at 16]. Further, Plaintiff posits that "[s]hould Plaintiff ultimately prevail on appeal, her doing so will underscore the amazing results that she will have obtained by dint of her counsels' efforts." [*Id.*].

Defendants, meanwhile, point out that their two primary, post-judgment motions were successful and corrected highly consequential legal errors. That is, Defendants successfully reduced Carlos Rios's individual liability, and Defendants successfully reduced their damages by $650,000.00.

When applying the lodestar method, "[t]ime spent is reasonable, and thus compensable, if it would be proper to charge the time to a client." *In re Home Depot Inc.*, 931 F.3d 1065, 1087 (11th Cir. 2019). But courts must "deduct unnecessary or redundant hours and time spent upon 'discrete and unsuccessful claims' from the calculations." *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301-02 (11th Cir. 1988)).

We agree with Defendants that Plaintiff should not be entitled to fees for the entirety of the post-trial proceedings because the parties' two major post-trial motions constituted, as to Plaintiff, "discrete and unsuccessful" matters. *Id*. As an initial matter, Plaintiff points to no authority that, despite achieving highly favorable results on each of the substantial post-trial motions, Defendants should nonetheless have to compensate Plaintiff's counsel in full. As for the first motion, Plaintiff

arguably multiplied the proceedings by opposing Defendants' right to even file the motion to alter the judgment on procedural grounds. In fact, we found that Plaintiff pursued a "'gotcha' theory" that ran "head-long against federal caselaw that defines what 'disposition' means for purposes of Rule 4." [D.E. 99 at 11]. Plaintiff also lost on the merits of the motion, as we granted Defendants' motion to alter the judgment and substantially reduced Carlos Rios's individual liability.

There is no basis, then, for penalizing Defendants' successful motion by requiring them to pay all of Plaintiff's fees. Clearly, Plaintiff (1) did not prevail on that motion, and (2) caused additional briefing by attempting to levy a novel jurisdictional challenge. Plaintiff of course had the right to oppose the motion in that manner, which may have generated even more fees had she prevailed.  But she does not have the right to charge Defendants—the victors of the motion—for her unsuccessful effort. This is especially true where Plaintiff provides no authority that Defendants should have to pay attorneys' fees for a post-trial motion on which they prevailed and corrected a consequential error of law. Accordingly, to the extent that Plaintiff seeks attorneys' fees for Defendants' motion to alter the judgment, Plaintiff's motion is denied.

As for Defendants' other primary post-trial motion (the motion for new trial, judgment as a matter of law, and/or remittitur), a partial reduction in fees is warranted. Defendants partially prevailed on the motion, in that the motion for remittitur resulted in a significantly decreased damages award for Plaintiff. Plaintiff does not demonstrate why she should nonetheless be entitled to all attorneys' fees for

her unsuccessful defense against that critical post-trial effort. But Plaintiffs did successfully stave off the motion for new trial, as well as the motion for judgment as a matter of law. So, only a partial fee reduction is appropriate.

To be clear, we appreciate that a prevailing party is often entitled to attorneys' fees on unsuccessful motions related to claims on which they prevailed, because those efforts often contribute to the overall success of the case, and cannot be fairly divorced from the prevailing party's ultimate success. *See Schindler Architects, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 06-60668-CIV, 2008 WL 11399573, at *4 (S.D. Fla. Feb. 15, 2008) ("Here, Plaintiff raised only one claim, for breach of contract, and the work on the unsuccessful motions cited by Defendant is simply work that was completed in furtherance of that one claim. Accordingly, the Court may not deduct the time spent on unsuccessful motions, and must consider the overall relief obtained by the Plaintiff in relation to the hours reasonably expended on the litigation.").

Here, conversely, the motion to amend the judgment and the motion for remittitur did not further Plaintiff's success in this case, and can easily be divorced from Plaintiff's achievements. Indeed, the motions (1) were discrete as compared to Plaintiff's case-in-chief, (2) occurred after Plaintiff already obtained all of her success in the case, (3) were filed to rectify legal errors made at trial (errors with significant financial consequences), and (4) were resolved substantially in Defendants' favor. Plaintiff—who ultimately carries the burden of demonstrating fee entitlement—points the Court to no circumstance in which fees were awarded in a similar setting.

Accordingly, because the motion to amend the judgment was a successful effort by Defendants to correct a critical legal error, we exercise our discretion to deny Plaintiff's Motion to the extent that it seeks attorneys' fees for that motion. As for the motion for new trial, judgment as a matter of law, and remittitur, Defendants were only partly successful (i.e., remittitur was granted, but a new trial and judgment as a matter of law were denied). But, the substantial portion of the billing entries for that motion were related to remittitur. Thus, 2/3 of the time Plaintiff expended on that motion will be deducted from Plaintiff's fee award. *See Jones v. City of Coll. Park, Georgia*, No. 1:05-CV-1797-WBH, 2011 WL 13391761, at *6 (N.D. Ga. Mar. 3, 2011) ("Likewise, Plaintiff's counsel spent 78.9 hours, representing $20,181.25 in fees, on Plaintiff's unsuccessful post-trial motion for equitable relief. The Court declines to include these amounts in the attorneys' fee award."); *Pergo (Eur.) A.B. v. Stanley Black & Decker, Inc.*, No. 4:16-CV-319-HLM, 2018 WL 3949744, at *2 (N.D. Ga. July 3, 2018) (denying supplemental motion for post-judgment attorneys' fees because "SBD was partially successful in defending itself on those Motions and should not be penalized for doing so"); *Jeffrey O. v. City of Boca Raton*, No. 03-80178-CIV, 2007 WL 9702659, at *7 (S.D. Fla. Aug. 21, 2007), *order corrected*, 2008 WL 11408485 (S.D. Fla. Feb. 14, 2008)  ("In Plaintiffs' eyes they may have achieved most of what they wanted, although that is doubtful given the other post trial motions in this case. It is clear that Plaintiffs did not obtain 100% of what they were seeking. Therefore, I will not award 100% of the fees requested."); *Webster Greenthumb Co. v. Fulton Cnty., Ga.*, 112 F. Supp. 2d 1339, 1351 (N.D. Ga. 2000) ("A computation of the hours

8

reasonably expended should not include time spent on 'discrete and unsuccessful' claims.").

Plaintiff's fee amount is thus reduced by $186,096.25, to reflect the deduction of (1) the time entries related to the motion to amend the judgment, and (2) 2/3 of the time entries related to the motion for new trial, judgment as a matter of law, and remittitur.[4]

### B. *Fee Multiplier*

We next assess whether Plaintiff is entitled to a 1.5 fee multiplier. In Florida, courts consider three factors in determining whether to apply a multiplier: "(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors in Rowe[5] are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client." *Houston Specialty Ins. Co. v. Vaughn*, 749 F. App'x 800, 803 (11th Cir. 2018) (quoting *Joyce v. Federated Nat'l Ins. Co.*, 228 So.3d 1122, 1128 (Fla. 2017)).

Here, Plaintiff—who paid her counsel on a contingency basis—argues that a fee multiplier is warranted due to the significant risk of nonpayment if Plaintiff did not fully prevail at trial. Further, Plaintiff argues that the "case involved intricate

---

[4] The Court sees no reason to reduce Plaintiff's time entries related to other post-trial matters (e.g., Defendants' unmeritorious motion to discharge their supersedeas bond, which was never posted), nor have Defendants presented persuasive argument for the Court to exercise its discretion to deny those fees.

[5] *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 & n.5 (Fla. 1985).

legal and factual issues, including claims of unpaid minimum wages, sex discrimination, retaliation and hostile work environment." [D.E. 158 at 16]. Of course, Plaintiff also emphasizes the results obtained (success on all counts at trial).

The problem for Plaintiff, however, is she does not even attempt to satisfy the initial prong. Specifically, she provides no evidence or argument that the South Florida market "require[d] a contingency fee multiplier to obtain competent counsel" for this litigation. *Houston Specialty Ins. Co.*, 749 F. App'x at 803. In *Houston Specialty*, for example, "the movant presented evidence that several firms in the Tampa area were unwilling to represent it on a fully contingent basis" because the case was complex and the likelihood of success was low. *Id*. The movant also demonstrated that the case required "master of the worker's compensation law," and that there were few firms in the market who were "equipped" to provide the expertise, personnel, and resources towards the case. *Id*. at 803. The Eleventh Circuit, because the district court heard and considered the movant's impressive evidentiary showing, affirmed the application of the fee multiplier.

Now compare *Houston Specialty* to *SafePoint Ins. Co. v. Castellanos*, 394 So. 3d 731 (Fla. 3d DCA 2024). There, the movant sought a fee multiplier. But the movant offered no evidence that "they had any difficulty retaining counsel to litigate this insurance dispute with or without a multiplier." *Id*. at 735. Further, there was no satisfactory showing as to "the novelty and difficulty of the question involved or whether the client could find any other competent attorney in the relevant market to handle the case." *Id*. Accordingly, "[b]ecause the record [was] devoid of competent

10

substantial evidence that the relevant market required a contingency fee multiplier to obtain competent counsel and because the trial court failed to make any specific findings to support the application of one," the Third DCA "reverse[d] the trial court's application of the 2.0 contingency multiplier." *Id.*

Here, akin to *Castellanos*, we have no evidence whatsoever that Plaintiff had to pursue this case on a contingency basis. And the facts and law in this case, while of course unfortunate for Plaintiff, were not unique or particularly complex as compared to typical cases involving unpaid wages and sexual harassment. This is especially true absent an evidentiary showing, like the one in *Houston Specialty*, that Plaintiff's counsel took this case on a contingency basis as a result of a dire market.

Accordingly, Plaintiff's Motion is denied to the extent that it seeks a fee multiplier under Florida law. *See USAA Cas. Ins. Co. v. Prime Care Chiropractic Centers, P.A.*, 93 So. 3d 345, 347 (Fla. 2d DCA 2012) ("If there is no evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, then a multiplier should not be awarded."); *Caribe Corp. v. Levin*, 338 So. 3d 13, 16 (Fla. 3d DCA 2022) (reversing contingency fee multiplier where no evidence was presented to show that the relevant market required a contingency fee multiplier to obtain competent counsel); *Universal Prop. & Cas. Ins. Co. v. Deshpande*, 314 So. 3d 416, 421 (Fla. 3d DCA 2020) ("Because the record is devoid of any evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, we reverse the trial court's application of a multiplier."); *Fla. Peninsula Ins. Co. v. Wagner*, 196 So. 3d 419, 422–23 (Fla. 2d DCA 2016) (reversing award of multiplier

where there was no showing or finding that without the prospect of a multiplier to an otherwise reasonable fee award, the Wagners would have had difficulty finding competent counsel to represent them in this insurance coverage dispute).

A fee multiplier under federal law is even more stringent. *See, e.g., In re Home Depot Inc.*, 931 F.3d 1065, 1084 (11th Cir. 2019) ("[I]t was an abuse of discretion for the District Court to apply a multiplier. The District Court's only stated reason for using a multiplier was the exceptional risk taken by [contingent fee] counsel in litigating the case. And risk, according to the Supreme Court, is not an appropriate basis for enhancing an attorney's fee in *statutory* fee-shifting cases.").  Indeed, "[f]ee multipliers may be warranted only in 'rare' and 'exceptional' cases, supported by both 'specific evidence on the record and detailed findings by the lower courts.'" *Zambrano v. Dom & Dom Pizza Inc.*, No. 11-20207-CIV, 2012 WL 2921513, at *5 (S.D. Fla. July 17, 2012) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

Here, just as under the Florida law framework, Plaintiff has failed to demonstrate any unique reason as to why the lodestar method does not adequately compensate her counsel. Indeed, while we commend Plaintiff's success at trial, we cannot say that the facts or law in this case, nor the market in which Plaintiff obtained her counsel, were "rare" or "exceptional" such that a fee multiplier is warranted. *See Zambrano*, 2012 WL 2921513, at *6 ("The undersigned finds this case does not constitute the type of rare and exceptional circumstances for which fee multipliers are justified. Plaintiff's counsel having obtained results for the plaintiff

that were exceptional based on his claims for overtime is unpersuasive to allow for a fee enhancement because the success of plaintiff's counsel is already taken into consideration in the Court's lodestar computation. Plaintiff's counsel is complimented for his efficient handling of this matter, however, the plaintiff's argument that he is entitled to a fee enhancement because of counsel's efficient handling of the case is unpersuasive because efficiency is an essential component of the lodestar calculation. Accordingly, a fee enhancement is not warranted in this matter.").

Thus, Plaintiff's Motion is denied to the extent it seeks a fee multiplier.

### C. *Defendants' Specific Objections*

Having found that Plaintiff is entitled to reduced post-trial fees and is not entitled to a fee multiplier, we address the bulk of Plaintiff's Motion: the fees she requests for prevailing on the merits of all claims.

As an initial matter, Defendants do not challenge any of the hourly rates sought by Plaintiff. [D.E. 161 at 2] ("Defendants do not challenge the foregoing hourly rates as unreasonable, and agree that they are within the rates customarily charged within the community for attorneys, paralegals, and staff members of like qualifications and experience."). We see no reason to disturb the parties' agreement and will honor the rates specified in Plaintiff's Motion. Defendants' challenges, then, are as to the reasonableness of the fees sought.

In determining an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have

established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id.*

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award. *See Cullens v. Georgia Dept. Of Transp.*, 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *Norman v. Housing Auth. Of Montgomery*, 836 F.2d 1292, 1299–1302 (11th Cir. 1988). It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens*, 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the

amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

In assessing the reasonableness of the hours expended, we must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." *ACLU of Georgia*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).

The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of the fees to award. *Id*. If the fee applicant fails to exercise required "billing judgment," the Court is obligated to "[prune] out those [hours] that are 'excessive, redundant, or otherwise unnecessary.'" *Id*. The Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303.

The party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded. *ACLU of Georgia*, 168 F.3d at 427. In the final analysis, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F.2d at 1301.

Here, Defendants' specific objections fall into four categories: insufficient description, duplicative efforts, clerical and administrative tasks, and redacted entries.[6] We will address these objections in turn.

### 1. Duplicative Efforts and Insufficient Description

Defendants' response incorporates a spreadsheet (Exhibit 1 to their response) in which Defendants input the letter "D" next to time entries they believe are duplicative, and "I" next to time entries that they interpret as insufficient descriptions.

These objections are conclusory. It is not obviously apparent from the identified time entries that they require deductions or are duplicative/insufficiently described. Rather, the Court would require explanation and argument from Defendants, at least to an extent, that these time entries were unreasonable. Without such an explanation, the Court will not rummage through each line of each exhibit and formulate arguments for Defendants as to each time entry. Accordingly, as to these two categories of objections, Defendants' Motion is denied. *See Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848-49 (11th Cir. 2018) ("The objected-to billing entries were not obviously excessive, duplicative, or indiscernible, so the district court did not abuse its discretion in concluding that [the fee opponents] had to do more than object without a full explanation."); *Gray v. Novell, Inc.*, No. 8:06-cv-1950-T-33TGW, 2012 WL 3871872, at *8 (M.D. Fla. Sept. 6, 2012) (not considering

---

[6] Defendants also raise objections to "excessive time" entries. But because each of those objections relate to the post-trial motions for which Plaintiff is not entitled to fees, those objections are moot.

16

objections to attorney hours that merely state "unrelated," "duplicative," and "other impermissible," as such objections "are too vague to assist the court in determining the propriety of the time entries"); *Norman*, 836 F.2d at 1301 ("Generalized statements that the time spent was reasonable or unreasonable ... are not particularly helpful and not entitled to much weight," and "[a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents."); *River Cross Land Co., LLC v. Seminole Cnty.*, No. 6:18-CV-1646-ACC-LHP, 2022 WL 20622333, at *17 (M.D. Fla. Dec. 12, 2022), *report and recommendation adopted*, No. 6:18-CV-1646-ACC-LHP, 2023 WL 5748424 (M.D. Fla. Jan. 5, 2023) ("Because River Cross either did not provide any explanation as to the basis for the remaining conclusory objections, or did not raise the objections at all in its response, the undersigned will recommend that these objections be overruled.").

## 2. *Clerical and Administrative Tasks*

Defendants next object that Plaintiff should not be permitted to recover attorneys' fees for several clerical and administrative tasks billed by non-lawyers. These include filing documents, scheduling conference calls, scheduling tasks, and assisting with general office tasks. Plaintiff, in her reply, offers no meaningful response to these objections.

"Paralegal fees can be recovered 'only to the extent that the paralegal performs work traditionally done by an attorney.'" *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1310–11 (S.D. Fla. 2009) (quoting *Allen v. U.S. Steel Corp.*, 665 F.2d 689,

697 (5th Cir. 1982)). Those recoverable tasks "include[ ] 'factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations and drafting correspondence,' *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989), but not 'clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers.'" *Id.* (quoting *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)).

Upon the Court's review of Defendants' annotated exhibit [D.E. 161-2], we have identified several time entries that, on their face, bill for purely clerical tasks (at least based on the information provided by Plaintiff). As to Leslie Martinez, these clerical entries include: calendaring deadlines and links [*id.* at cell 19, 53, 62, 97, 99, 129, 182, 193] ($183.75), and making administrative calls, e-mails, and texts. [*Id.* at cells 35, 56–60, 67, 79–80, 85, 92–95, 115, 117, 140, 142, 144, 146, 153–55, 176, 189, 195, 204] ($329.00).

As to Jocelyn Aguilar, these clerical entries include emails to the client. [*Id.* at cells 1–2] ($11.25). The same goes for Lucila Alvarez, who block billed an email to the client and sending a letter to the client. [*Id.* at cell 2] ($67.50). Further, Ashley Bruneus billed a similarly clerical task. [*Id.* at cell 1] ($30.00).

Moreover, Ursula Lanfranco billed for several tasks that, on their face, are purely clerical, including: calendaring deadlines [*id.* at cells 8, 17–19] ($41.25); indexing documents into internal folders [*id.* at cells 5, 7, 14, 26, 29] ($22.50); and uploading documents. [*Id.* at cells 1, 3, 4, 11, 35] ($37.50).

Lastly, Ana Turcios billed several times for the purely clerical task of uploading documents. [*Id.* at cells 1–11, 13–25] ($112.50).

There is ample support in this Circuit for finding that each of these tasks are purely clerical, especially absent an explanation as to why the tasks would require the expertise of an attorney and/or are traditionally completed by an attorney. That is, Plaintiff provides no reason to doubt that these tasks are commonly accomplished by non-lawyers. *See Troy B. v. Comm'r, Soc. Sec. Admin.*, No. 1:19-CV-5503-JSA, 2022 WL 3337618, at *6 (N.D. Ga. Feb. 16, 2022) (finding that, absent additional context, calendaring deadlines is purely clerical and not recoverable); *In re Dorn*, No. 6:10-BK-06282-KSJ, 2012 WL 1038786, at *3 (Bankr. M.D. Fla. Mar. 26, 2012) ("This entry is stricken because sending a simple email reminding the client of something is purely of a clerical nature."); *Whitney Bank v. Pullum-Cecilio, LLC*, 2015 WL 3719143, at *7 (S.D. Ala. June 15, 2015) (concluding that time spent "receiving, reviewing, and indexing documents" was clerical and therefore was not recoverable); *Martin v. Italian Cabinetry, Inc.*, No. 18-CV-24958, 2019 WL 3429919, at *3–4 (S.D. Fla. June 6, 2019) (stating clerical tasks include scheduling, telephone calls, mailing, filing, and e-filing are not compensable because they require "no skill or training"); *Pronman v. Styles*, No. 12-80674-CIV, 2016 WL 3661940, at *4 (S.D. Fla. Mar. 15, 2016), *report and recommendation approved*, 2016 WL 3636867 (S.D. Fla. Apr. 6, 2016), *aff'd*, 676 F. App'x 846 (11th Cir. 2017) ("In this case, Defendant's counsel billed for a vast number of secretarial tasks such as, but not limited to, scanning and saving documents, uploading proposed orders, filing documents online, preparing

19

"form Post Office Letters", mailing documents, printing documents, calendaring deadlines, and organizing the file. The time spent on these clerical tasks is not recoverable.").

Accordingly, the Court will deduct $835.25 from Plaintiff's requested fee amount to reflect the clerical tasks for which Plaintiff billed.[7]

### D. *Taxable Costs*

Lastly, we assess Plaintiff's Bill of Costs that was founded only under 28 U.S.C. § 1920. In all, Plaintiff seeks $6,694.17. Defendants object to $1,569.25 of that amount: a $100.00 "flat fee for copying and postage per retainer agreement"; a $742.50 expense for "Mediation – Gray Robinson"; a $109.25 cost for "Deposition – Late Cancellation"; and a $617.50 cost for "Deposition – Non-Transcribed of: Esther Alayeto & Anne Edward Lockhart." Plaintiff, meanwhile, fails to incorporate a memorandum in support of her Bill of Costs, and largely fails to address any of Defendants' objections to costs outside of conclusory assertions in her Reply that the costs are recoverable.

Under Fed. R. Civ. P. 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute. A strong presumption exists in favor of awarding costs. *Id*. A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons,*

---

[7] Defendants also lodge objections that certain time entries are redacted and therefore should not be recoverable. We "do[ ] not find," however, "that the time entries in this case are unacceptably vague or too heavily redacted as to warrant a deduction." *Meyrowitz v. Brendel*, No. 16-81793-CV, 2018 WL 4440492, at *6 (S.D. Fla. Sept. 17, 2018).

*Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920). "To defeat the presumption and deny full costs, a district court must have a sound basis for doing so." *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000).

Pursuant to section 1920, a court may award the following costs:

(1)     Fees of the clerk and marshal;
(2)     Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)     Fees and disbursements for printing and witnesses;
(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)     Docket fees under section 1923 of this title; and
(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

### 1.  *Flat Fee for Copying*

Plaintiff seeks $100.00 for a "flat fee for copying and postage per [Plaintiff's] retainer agreement." Defendants object, and argue that there exists no explicit basis under section 1920 for recovering this cost. Plaintiff, meanwhile, asserts that the costs are recoverable as printing fees and copying fees.

While it is not inconceivable that fees for copying and postage can be recovered, they are not "clearly recoverable." *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (stating that "costs such as general copying" and "postage" are not clearly recoverable under Section 1920). And Plaintiff—who carries the burden of demonstrating her entitlement to costs—makes no effort to support her request, explain what the request entails, and/or demonstrate why the cost should be recoverable.

Consequently, the Court has no basis to award the costs or overrule Defendants' objection. The Motion, therefore, is denied in this regard, and Plaintiff's Bill of Costs will be reduced by $100.00. *See Vega v. Zudy Supermarket Inc.*, No. 8:22-CV-2062-TPB-MRM, 2023 WL 3584072, at *5 (M.D. Fla. Feb. 7, 2023) ("Neither the cost of military verification nor the cost of copying and postage for a retainer agreement are expressly named in § 1920 as a taxable cost. The motion sub judice fails to address this issue or otherwise provide any authority in support of his entitlement to these costs. Thus, the Court cannot determine whether the requested costs are recoverable here."); *Browder v. E&S Commc'ns, LLC*, No. 21-80337-CIV, 2023 WL 11951127, at *2 (S.D. Fla. Jan. 13, 2023) (denying motion to tax "costs for copying and postage fees, which are not delineated in the taxation of costs statute, 28 U.S.C § 1920" and were not otherwise supported by helpful argument).

## 2. *Mediation*

Plaintiff seeks $742.50 related to mediation, pursuant to section 1920 and Federal Rule 54(d)(1). But "[c]ourts in the Eleventh Circuit have consistently found that that mediation costs are not compensable because mediation costs are not listed under Section 1920." *Gomez v. Pub. Health Tr. of Miami-Dade Cnty.*, No. 23-22034-CIV, 2024 WL 3103746, at *3 (S.D. Fla. Apr. 4, 2024); *see also Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1346 (11th Cir. 2006), *opinion vacated and superseded on reconsideration on other grounds*, 475 F.3d 1239 (11th Cir. 2007) ("Section 1920 provides no basis for any of these claims [including claims for mediation costs]....); *Abrams-Jackson v. McKeever*, No. 16-CV-81624-MARA/MATTHEWMAN, 2017 WL

22

894862 (S.D. Fla. Dec. 18, 2017) ("Mediation costs are not recoverable under section 1920.").

In light of this clear and unambiguous precedent, Plaintiff provides no reason why she should nonetheless be awarded mediation costs. Accordingly, Plaintiff's Motion is denied in this respect, and $742.50 will be deducted from her Bill of Costs. *See Gomez*, 2024 WL 3103746, at *3 ("Because this Court finds no support for the Defendant's contention in this Circuit's case law, nor any statutory authorization giving this Court the authority to tax mediation costs, this Court will not grant the mediation costs on these grounds."); *see also Charon v. El Milagro Care Center, Inc.*, No. 07-22835-CIV, 2010 WL 302833, at *7 (S.D. Fla. July 29, 2010) (denying plaintiffs' request to tax costs for mediation because "[t]here is no statutory authorization for taxing mediation fees, and the [p]laintiffs have not provided any authority supporting their position.").

### 3. *Deposition Cancellation Fee*

Defendants next object to Plaintiff's effort to tax $109.25 for the late cancellation of a deposition. "In this Circuit, there is myriad support that '[c]ancellation fees are not recoverable under § 1920,' and specifically where the deponent's failure to appear or request for cancellation is at no direct fault of the non-moving party." *Certain Underwriters at Lloyds of London v. Scents Corps.*, No. 22-CV-21262, 2024 WL 4528794, at *3 (S.D. Fla. Oct. 1, 2024), *report and recommendation adopted*, No. 22-21262-CIV, 2024 WL 4527708 (S.D. Fla. Oct. 18, 2024) (citing *Blanco v. Samuel*, No. 21-CV-24023, 2023 WL 4160667, at *9 (S.D. Fla.

Apr. 14, 2023), *report and recommendation adopted*, 2023 WL 4160639 (S.D. Fla. June 23, 2023) (denying motion to tax cancellation fees because "[c]ancellation fees are not recoverable under § 1920")).

Here, Plaintiff has again provided no reason why we should go against the grain and award a generally-unrecoverable cost. Indeed, Plaintiff has made no effort to show why the deposition was cancelled, whose fault it was, and why those circumstances should warrant a rare cost award.

Accordingly, Plaintiff's Motion is denied on this score, and her Bill of Costs will be reduced by an additional $109.25. *See Henry v. Celebrity Cruises, Inc.*, No. 21-20148-CIV, 2022 WL 17994276, at *3 (S.D. Fla. Nov. 21, 2022), *report and recommendation adopted*, 2022 WL 17986794 (S.D. Fla. Dec. 28, 2022) (denying motion to tax cancellation fees because "Plaintiff provides no information how these cancellation fees fall within § 1920(2)"); *George v. Chipotle Mexican Grill Serv. Co.*, No. 6:12-CV-845-ORL, 2014 WL 5426519, at *4 (M.D. Fla. Oct. 24, 2014) (noting that "[c]ancellation fees are not listed as a recoverable cost under § 1920" and concluding that "[t]he record reflects that both parties noticed Ms. Reyes' deposition, and that neither party was responsible for Ms. Reyes' failure to appear for her first scheduled deposition. In light of the foregoing, the undersigned finds that Defendants are not entitled to recover the cancellation fee.").

### 4. *Video Depositions*

Lastly, Defendants object to the $617.50 Plaintiff seeks to tax for the non-transcribed video deposition of Esther Alayeto and Anne Edward Lockhart. The

Eleventh Circuit has concluded that a similar video deposition cost could be recoverable if the proponent "noticed [the] deposition to be videotaped rather than transcribed." *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 465 (11th Cir. 1996). That is, "when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation …, it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed." *Id.*

Here, we have no evidence that the deposition was noticed as a video deposition. Further, Plaintiff has offered no argument as to "why the video deposition was necessary." *Bostick v. State Farm Mut. Auto. Ins. Co.*, No. 8:16-cv-1400-T-33AAS, 2018 WL 1474712, at *4 (M.D. Fla. Mar. 8, 2018). Accordingly, Defendants' objection is well-founded, and Plaintiff's Bill of Costs will be reduced by an additional $617.50. *See Beasley v. Wells Fargo Bank, NA*, No. 6:20-CV-883-WWB-EJK, 2022 WL 18716682, at *5 (M.D. Fla. Aug. 4, 2022), *report and recommendation adopted*, No. 6:20-CV-883-WWB-EJK, 2022 WL 18716684 (M.D. Fla. Sept. 1, 2022) ("Here, Lilac has failed to explain why a video deposition was necessary. Accordingly, Lilac has not made a showing that its deposition costs are taxable, and the undersigned recommends that its request for this amount, $160.00, be denied."); *cf. Doe v. Rollins Coll.*, No. 6:18-CV-1069-RBD-LRH, 2021 WL 3230424, at *7 (M.D. Fla. July 13, 2021), *report and recommendation adopted*, No. 6:18-CV-1069-RBD-LRH, 2021 WL 3209564 (M.D. Fla. July 29, 2021) ("Here, there is nothing in the record to suggest that

Plaintiff lodged an objection to conducting the depositions at issue by video, both of which were noticed to be 'recorded by stenographic means and by sound and videotape.' And, Defendant has provided sufficient argument and authority as to why the two video depositions were necessarily obtained for use in this case, including the importance of Plaintiff's testimony in this case, and to ensure the availability of Mr. Barker's testimony for trial. … Accordingly, I will respectfully recommend that the Court permit Defendant to recover the costs associated with conducting Plaintiff's and Mr. Barker's depositions by video.").

### III.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Fees and Costs is **GRANTED in part** and **DENIED in part**. Plaintiff is entitled to $351,847.25 in attorneys' fees, plus post-judgment interest pursuant to 28 U.S.C. § 1961. This amount includes a $186,096.25 deduction for the two discussed post-trial motions, an $835.25 deduction for clerical tasks, and no fee multiplier.

Plaintiff is also entitled to $5,124.92 in costs. This amount reflects a $100.00 deduction for unsubstantiated copying and postage fees, a $742.50 deduction for mediation costs, a $109.25 deduction for unsubstantiated deposition cancellation costs, and a $617.50 deduction for unsubstantiated video deposition costs

**DONE and ORDERED** in Chambers at Miami, Florida this 30th day of May, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge